IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**IMELDA HERNÁNDEZ**

        **Plaintiff,**

**vs.**                                                **Civ. No.  08-323 JCH/CEG**

**JOHN E. POTTER,**
**Postmaster General of the United States,**

        **Defendant.**


## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant John E. Potter's *Motion for Summary Judgment*, filed May 4, 2009 [Doc. 42].  The Court having considered the motion, briefs, exhibits, and relevant law, and being otherwise fully informed, finds that Defendant's motion is well taken and should be GRANTED.

## BACKGROUND

Plaintiff Imelda Hernandez is a female of Mexican origin who was 35 years old at the time of the events leading to this action.  She began working for the United States Postal Service ("USPS") on February 18, 2006 as a Rural Carrier Associate ("RCA") assigned to the Richard Pino Station in Albuquerque, New Mexico.  As with all other new RCAs, Plaintiff's status with the USPS was probationary until she worked ninety days or was employed for a calendar year, whichever occurred first.  The probationary period provides the USPS with the opportunity to evaluate an employee's suitability for permanent employment.  During her probationary period, Plaintiff was an "at-will employee" whose employment with the USPS could be terminated for any legal, non-discriminatory reason.

Plaintiff's role as an RCA entailed her filling in for regular rural mail carriers who were on vacation or extended leave.  RCAs are not salaried employees, and are instead paid at an hourly rate.  Plaintiff's pay, as well as that of all other RCAs, was based in part on an "evaluated time system," under which she was paid the "evaluated" (estimated) time for the routes she handled, regardless of her actual hours worked, in those weeks in which she did not work over forty hours.  If she worked more than forty hours in a week, she was paid for her actual hours worked, including overtime for the hours worked in excess of forty.  Plaintiff's hourly pay rate was $16.45.

On May 12, 2006, Plaintiff delivered mail on Rural Route 54, a route having an evaluated time of 9.29 hours.  Plaintiff completed the route in only six hours.  Plaintiff was paid for the actual time she spent delivering the route, rather than the evaluated time.  Plaintiff claims that she should have been paid instead for the evaluated time, resulting in an underpayment of 3.29 hours or $54.12.  Plaintiff worked a total of 50.8 hours during the weekly pay period that included May 12.

On May 22, 2006, Plaintiff delivered mail on Rural Route 105.  While completing her route, Plaintiff lost her "Arrow Key"– a master key that opens every customer mailbox in Albuquerque.  Plaintiff told her co-worker, Jay Gruberman, that she had lost her key.  He then lent Plaintiff his arrow key so that she could complete her route.  At the end of that workday, Mr. Gruberman notified James Jarm, a Customer Service Supervisor at Richard Pino Station, that Plaintiff had lost her Arrow Key.  Despite several USPS workers returning to the area to search for the key, it was not located until two days later, when it was found by a customer and returned to the Station.

On May 24, 2006, Adam Trujillo, a Customer Service Supervisor and Officer in Charge

2

of Richard Pino Station, conducted an investigative interview of Plaintiff.  During the interview, Plaintiff agreed that, on May 22, she completed paperwork signing out the Arrow Key to do her route, but that she lost the key while delivering mail on Route 105.  She admitted that the key was not attached to her belt or clothing, as required by regulations, and that she was responsible for the loss.  Plaintiff now claims that she did not attach the key to her belt or clothing because the chain to which the key was attached was too short to make the key functional when it was attached.  She also asserts that, because she is hearing impaired, she did not hear the key hit the ground when she lost it.

After the interview with Mr. Trujillo, Plaintiff was not called to return to work.  On June 8, 2006, Mr. Trujillo issued a Notice of Separation to Plaintiff, informing her that she would be separated from her employment with the USPS, effective June 10, 2006.  The Notice of Separation stated that it was based on Plaintiff's inability to perform her assigned duties in an efficient manner.  It specifically referenced her loss of the Arrow Key and that she did not report its loss.  Mr. Trujillo issued the separation while Plaintiff was still within her probationary period.

On June 6, 2008, Plaintiff filed her First Amended Complaint [Doc. 3], which stated four counts.  Count I (Age Discrimination), Count II (National Origin Discrimination-Mexican), and Count III (Gender Discrimination) all relate to Plaintiff's allegations that she was denied equal pay for her May 12, 2006 route and that she was wrongfully terminated.  Count IV (Retaliation) alleges that she was wrongfully terminated for "speaking out against discriminatory treatment on the job."  Amended Complaint [Doc. 3] at ¶ 43. In addition, although not referenced in any of the Counts, Plaintiff's Complaint also asks the Court to declare that Defendant violated the

Rehabilitation Act of 1973.  *Id.* at 12.[1]

## LEGAL STANDARDS

A.  Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides for entry of summary judgment where "there is no genuine issue as to any material fact" and the moving party is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Thomas v. IBM*, 48 F.3d 478, 484 (10th Cir. 1995) (citation omitted).  In applying this standard, the record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment, in this case, Plaintiff.  *See McKnight v. Kimberly Clark Corp.*, 149 F. 3d 1125, 1128 (10th Cir. 1998).

The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving

---

[1] Because Plaintiff has not pled a claim for violation of the Rehabilitation Act of 1973, or sufficiently indicated the manner in which Defendant allegedly violated the Act, the Court cannot fully address this matter.  The Court notes, however, that in Plaintiff's pursuit of the portion of her EEO complaint related to her hearing impairment, she indicated that "[t]he type of accommodation I need was for someone to clearly show me how important it was to pull down the mail the same way as the 'the line of travel' required otherwise it was very hard while delivering."  EEO Investigative Affidavit, attached as Ex. H to Defendant's Reply to Plaintiff's Response to Motion for Summary Judgment [Doc. 47] at 3.  This requested accommodation appears to be unconnected to Plaintiff's alleged hearing loss.  Thus, the reference in the Complaint to Plaintiff's request "to be accommodated for her disability," First Amended Complaint [Doc. 3] at ¶ 32, must either refer to a request unconnected to her alleged hearing loss, or must refer to a requested accommodation not referenced in her EEO complaint, and therefore not properly before the Court because it has not been administratively exhausted.

party meets its burden, "the burden shifts to the nonmovant to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). The opposing party may not rest upon "mere allegations and denials in the pleadings . . . but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) (citation omitted). An issue of fact is genuine if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. *See id*. at 249. In conducting its summary judgment analysis, the Court must not weigh evidence or assess the credibility of any witness, but instead must focus solely on whether genuine factual issues exist requiring a trial. *See id*. at 249, 255.

   B. <u>Age Discrimination</u>

   The Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), prohibits an employer from failing to hire or discharging any individual, or discriminating against such individual with respect to her compensation, or terms, conditions, and privileges of employment, because of such individual's age. *See MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1276-77 (10th Cir. 2005). To establish a *prima facie* age discrimination disparate treatment claim, a plaintiff must demonstrate that: 1) she was within the age group protected by the ADEA when she was discriminated against; and 2) she was treated differently than similarly-situated employees engaged in the same conduct. *See id*. at 1277. To establish a *prima facie* age discrimination discharge claim, a plaintiff must demonstrate that: 1) she was within the age group protected by the ADEA when she was terminated; 2) she was performing her job satisfactorily; 3) she was discharged; and 4) she was replaced by a younger worker. *See*

*Miller v. Eby Realty Group LLC*, 396 F.3d 1105,1111 (10th Cir. 2005).

      C.      <u>Discharge Based on Gender or National Origin</u>

      In order to establish a *prima facie* claim of discriminatory discharge based on gender or national origin under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* a plaintiff must show that: 1) she is a member of a protected class; 2) she was qualified for her position; 3) despite her qualifications, she was discharged; and 4) the job was not eliminated after her discharge.  *Rivera v. City and County of Denver*, 365 F.3d 912, 920 (10th Cir. 2004) (national origin discrimination); *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1150 (10th Cir. 2008) (gender discrimination).

      Claims involving circumstantial evidence of discrimination, rather than direct evidence, are subject to the three-step burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), and its progeny.  *See Adamson*, 514 F.3d at 1145.  To survive summary judgment under this framework, a plaintiff must initially establish a *prima facie* case of discrimination.  *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002).  If the plaintiff cannot establish a *prima facie* case, summary judgment should be entered on behalf of the defendant.  *Id.*  If the plaintiff can establish a *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its action.  *McDonnell Douglas*, 411 U.S. at 802.  This burden is one of production, not persuasion. *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000).  The defendant need not demonstrate that the reason it relied upon was factually correct, or even that the action was actually motivated by the proffered reason; it must simply offer a facially nondiscriminatory reason for its action.  *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

      If the defendant meets this burden, the presumption of unlawful discrimination drops

from the case.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).  Once the

defendant has met its burden, "summary judgment is warranted unless the employee can show

there is a genuine issue of material fact as to whether the proffered reasons are pretextual."

*Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005).  The relevant inquiry here is not whether

the defendant's actions were wise, fair, or correct, but whether the defendant honestly believed

those reasons and acted in good faith on those beliefs.  *See Riggs v. Airtran Airways, Inc.*, 497

F.3d. 1108, 1118-19 (10th Cir. 2007).  "Pretext can be shown by such weaknesses,

implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered

legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy

of credence and hence infer that the employer did not act for the asserted non-discriminatory

reasons."  *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir. 1997).

     D.  <u>Wage Discrimination Based on Gender or National Origin</u>

To establish a claim of wage discrimination on the basis of gender or national origin

under Title VII, a plaintiff must prove that the employer intentionally discriminated against her.

*See Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1306 (10th Cir. 2005).  To make a *prima*

*facie* case, the plaintiff must demonstrate that she was paid less than similarly situated males and

employees not of her national origin, and that such disparity was the result of intentional

discrimination.  *See Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1311 (10th Cir. 2006).  If the

plaintiff can establish her *prima facie* case, the Court then uses the *McDonnell Douglas* burden-

shifting framework, discussed above, to evaluate whether the claim can survive summary

judgment.  *See Mickelson*, 460 F.3d at 1311.

     E.  <u>Retaliation</u>

Title VII prohibits retaliation against employees for opposing any practice made unlawful

by Title VII or for asserting a charge, testifying, assisting or participating in any manner in an investigation, proceeding, or hearing under Title VII.  *See Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998).  To establish a *prima facie* case of retaliation, the plaintiff must show that: 1) she engaged in protected opposition to discrimination or participated in a proceeding or hearing under Title VII; 2) she suffered an adverse action that a reasonable employee would have found material; and 3) a causal nexus exists between her opposition and the employer's adverse action.  *See Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1122-23 (10th Cir. 2007).  In addition, the Tenth Circuit also requires that the plaintiff show that the management personnel responsible for making the decision had knowledge of plaintiff's protected acts.  *See Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1176 (10th Cir. 2007).  Similar to a discrimination claim, once the employee establishes a *prima facie* case of retaliation, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  *See O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1252 (10th Cir. 2001).  If the defendant successfully articulates such a reason, the employee must then demonstrate that the employer's proffered reason for the adverse action is pretextual.  *Id.*

## ANALYSIS

A.  Age Discrimination

Plaintiff claims that she was discriminated against by being underpaid and wrongfully terminated because of her age in violation of the ADEA.  In order to be within the age group protected by the ADEA, Plaintiff must have been at least 40 years old at the time of the alleged discrimination.  *See* 29 U.S.C. § 633a(a).  Plaintiff admits that her date of birth is December 8, 1970.  *See* Plaintiff's Responses to Defendant's First Set of Requests for Admission, attached as Exhibit A to Defendant's Memorandum in Support of Motion for Summary Judgment

8

(hereinafter "Def't Mem.") [Doc. 43] at 1.  Thus, Plaintiff would have been 35 years old at the time of the events giving rise to her claim, and is not within the age group protected by the ADEA.  Summary judgment is therefore granted on Plaintiff's ADEA claim.[2]

      B.  <u>Discharge Based on Gender or National Origin</u>

      As previously discussed, in order to establish a *prima facie* case of impermissible discharge based on gender or national origin, Plaintiff must demonstrate that she is a member of a protected class, that she was qualified for her position, that she was discharged despite her qualification, and that her position was not eliminated after her discharge.  In this case, there is no dispute that plaintiff is a member of protected classes as a female of Mexican origin, that she was discharged, or that her position was filled after her discharge.  Thus, the only element of the *prima facie* case for which Plaintiff must produce evidence is that she was qualified for her position.  Although Defendant disputes the issue of Plaintiff's qualification, the Court will presume, for purposes of deciding this motion only, that Plaintiff was qualified for her position and that she has met her *prima facie* case.

---

      [2] The Court notes that Plaintiff's Complaint claimed that Plaintiff was over 40 years old. *See* Amended Complaint [Doc. 3] at ¶¶ 6, 9, and 35.  In filing a complaint, an attorney is certifying to the Court "that to the best of the [attorney's] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances...the factual contentions have evidentiary support."  Fed. R. Civ. P. 11(b).  Although it is unclear how this ADEA claim, misrepresenting Plaintiff's age by at least five years, could have been filed based on knowledge formed after an  inquiry that was reasonable under the circumstances, the Court will assume that it was a mistake made in good faith.  What is even less clear, however, is why no effort appears to have been made to drop the claim following the revelation of Plaintiff's actual age.  Not only did Plaintiff's counsel not file an amended complaint dropping the claim, but counsel did not renounce the claim in her Response to Defendant's Motion for Summary Judgment, even after having admitted that Plaintiff was only 35 years old at the time of the events.  In fact, the Pretrial Order, filed June 22, 2009 [Doc. 50], still contains references to Plaintiff's claims of age discrimination, months after she conceded her true age.  This is completely unprofessional and a matter the court intends to take up with counsel after the conclusion of this case.

Given the presumption that Plaintiff has met her *prima facie* case, the burden shifts to Defendant "to articulate some legitimate, nondiscriminatory reason" for its action. *McDonnell Douglas*, 411 U.S. at 802. Defendant easily meets this burden. Given Plaintiff's probationary status in her employment, the asserted grounds for her dismissal would not even have to rise to the level of just cause to constitute a legitimate, nondiscriminatory basis for termination. Plaintiff does not deny that she was hired by the USPS on a probationary basis and was required to perform her job satisfactorily for ninety days actually worked or one calendar year, whichever occurred first, before she was no longer a probationary employee. During the probationary period, the USPS has the right to "separate," i.e., terminate, an employee "because work performance or conduct during this period fails to demonstrate qualification for continued postal employment," as long as the employee is notified in writing as to why he or she is being terminated. Section 365.32 of the Postal Service's Employee Relations Manual, attached as Ex. 2 to Ex. C of Def't Mem. [doc. 43]; *see also* Articles 12.1.A and 30.2.b of the Agreement between the United States Postal Service and the National Rural Letter Carriers' Association, attached as Ex. 1 to Ex. C of Def't Mem. (discussing and defining the probationary period).[3]

---

[3] Plaintiff disputes Defendant's contention that the USPS can separate from its employ a probationary employee at any time during the probationary period, and cites Article 16 of the Agreement between the United States Postal Service and the National Rural Letter Carriers' Association, which governs disciplinary procedures. *See* Plaintiff's Response to Defendant's Motion for Summary Judgment [Doc. 44] at 10. This citation creates, at most, a legal question regarding the limits of Defendant's power to dismiss Plaintiff. It does not create a material question of fact. In addition, Article 16, cited by Plaintiff without any context, governs only discipline or discharge of a permanent employee, rather than probationary-period "separation," which does not provide a probationary employee with the same procedural protections as a permanent employee. *See American Postal Workers Union v. United States Postal Service*, 940 F.2d 704, 707 (D.C. Cir. 1991). Allowing a probationary employee to "enforce against the [USPS] the just-cause requirement for dismissals contained in Article 16...would undermine the purpose of the probationary employment period–to permit an employer to evaluate a new employee on a trial basis and terminate [her] *for whatever reason it chooses* during the trial

In its letter to Plaintiff notifying her that she was being separated from her employment with the USPS, Defendant cited Plaintiff's loss of the Arrow Key and her failure to report that loss. *See* Notice of Separation, attached as Ex. 1 to Ex. A of Def't Mem. [Doc. 43]. The supervisor responsible for making the decision to terminate Plaintiff, Adam Trujillo, testified that he terminated Plaintiff solely for the reasons cited in the Notice of Termination. *See* Declaration of Adam Trujillo, attached as Ex. C to Def't Mem. at ¶ 18. Plaintiff admits that she lost the Arrow Key. *See* Pl. Resp. [Doc. 44] at 14. Losing an Arrow Key appears to be a serious infraction, as this master key opens practically every mailbox in Albuquerque,[4] potentially compromising the security of everyone's mail in the event of its loss. Thus, Defendant's explanation provides a legitimate, nondiscriminatory reason for the termination.

As Defendant has met its burden, any presumption of unlawful discrimination drops from the case. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). Thus, summary judgment for Defendant is warranted unless Plaintiff can demonstrate the existence of a genuine issue of material fact as to whether Defendant's proffered reasons for termination are merely a

_____

period of employment." *Id.* (emphasis added).

[4] Plaintiff disputes Defendant's material fact that "[a]n arrow key is a master key that opens every customer mailbox in Albuquerque." *See* Pl. Resp. [Doc. 44] at 12. As grounds for disputing this fact, Plaintiff selectively and misleadingly cites the deposition testimony of Adam Trujillo. *See id.* Plaintiff paraphrases Mr. Trujillo's testimony as indicating that an Arrow Key is "a special key that is assigned specifically to the Agency and also a special key that's assigned to specific zones....Each one is assigned to a specific area." *Id.* (ellipsis in original). Mr. Trujillo's full testimony indicates that an Arrow Key is "a special key that is assigned specifically to the Agency and also a special key that's assigned to specific zones. *So, i.e., cities. So in other words, you cannot have an Arrow Key in California open up a box in, you know, New Mexico*. Each one is assigned to a specific area." Deposition of Adam Trujillo, attached as Ex. 5 to Pl. Resp. [Doc. 44] at 50:7-11. The full quotation does not provide any grounds for challenging Defendant's statement of fact. Plaintiff's use of an altered quotation that changes the substance of Mr. Trujillo's statement as a basis for challenging a material fact is disturbingly misleading at best.

subterfuge for discrimination on the basis of gender or national origin.  A plaintiff can raise the issue of pretext by demonstrating, through admissible evidence, "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir. 1997).  In examining the issue of pretext, the Court's role is "not to act as a 'super personnel department' that second guesses employers' business judgments," but rather to determine whether the plaintiff has presented sufficient evidence to enable a fact finder to conclude that the defendant's proffered reasons for termination may not be worthy of belief.  *Simms v. Oklahoma ex rel Dep't of Mental Health and Substance Abuse Servs.*, 165 F3d 1321, 1329 (10th Cir. 1999) (citation omitted).

Plaintiff has offered no admissible evidence to indicate that Defendant's explanation for her termination was pretextual.  Plaintiff does not contend that Mr. Trujillo, who solely made the decision to terminate her, ever commented on her gender or national origin in a disparaging manner, nor does she contend that any other supervisor discussed her gender or national origin.  Thus, Plaintiff's termination did not take place under circumstances that give rise to an inference of discrimination.

Plaintiff contends that Defendant's explanation is unworthy of belief because someone else allegedly lost an Arrow Key and was not terminated.  Plaintiff's contention is based on a conversation that she allegedly had with someone named Maria Rodriguez who told her that she had lost a key and not been fired.  *See* Plaintiff's deposition, attached as Ex. E. to Def't Mem. [Doc. 43] at 49:3-50:4.  As an initial matter, Plaintiff's contention cannot create a material question of fact, because it relies on hearsay rather than admissible evidence.  *See Young v.*

*Dillon Cos., Inc.*, 468 F.3d 1243, 1252 (10th Cir. 2006) (court may not consider inadmissible hearsay testimony from depositions submitted in opposition to motion for summary judgment). Even if Plaintiff's contention that Ms. Rodriguez was not terminated after losing a key was not based on hearsay testimony, she has failed to demonstrate its materiality to the case. Plaintiff has not indicated whether Ms. Rodriguez was a probationary or permanent employee, the time period in which she lost the key, how long the key remained missing, whether she immediately reported the key missing, who her supervisor was, or whether the post office at which Ms. Rodriguez worked (Rio Rancho) had the same policies as Richard Pino Station. As such, Plaintiff has not offered any evidence that she was similarly situated to Ms. Rodriguez, and so Ms. Rodriguez's alleged experience is not material to this case.

Plaintiff also contends that sufficient evidence exists to cast doubt on Defendant's explanation that she was fired in part for not immediately reporting that she lost the Arrow Key, because her cell phone records indicate that she called Richard Pino Station twice on the afternoon of the day she lost the key. *See* Pl. Resp. [Doc. 44] at 14-15. However, she has not presented any evidence that she spoke with anyone at the Station, that she informed anyone there that she had lost the key, or that such information was relayed to Mr. Trujillo. As such, the telephone call, by itself, is not relevant to the question of whether Mr. Trujillo believed that she had not immediately reported the loss of the key. Plaintiff has not presented any other evidence to contest the sworn statements of Mr. Trujillo and Mr. Jarm that they were not notified about the loss of the key until the evening of the day it was lost, and they were notified by Plaintiff's co-worker, Jay Guberman, who had loaned her his key. Simply put, Plaintiff has not demonstrated that Defendant's "proffered [race-neutral] reasons were so incoherent, weak, inconsistent, or contradictory that a rational trier of fact could conclude the reasons were

13

unworthy of belief." *Stover v. Martinez*, 382 F.3d 1064, 1076 (10th Cir. 2004).  Thus, Defendant's motion for summary judgment must be granted on the discriminatory discharge counts.

     C.  <u>Wage Discrimination Based on Gender or National Origin</u>

     In order to prevail on a wage discrimination claim brought under Title VII, a plaintiff must demonstrate not only that she was paid less than similarly-situated co-workers of different gender or national origin, but also that such disparity in pay was intentional on the part of the employer, and was motivated by the plaintiff's gender or national origin.  *See Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1311 (10th Cir. 2006).  Plaintiff has failed to come forward with any evidence supporting her contention that she was underpaid, or that such alleged underpayment resulted from unlawful discrimination, so Defendant is entitled to summary judgment on the wage discrimination claims.

     In her Complaint, Plaintiff contends that her pay was inconsistent and that she was being paid less than comparably suited males and persons of non-Mexican origin.  First Amended Complaint [Doc. 3] at 4, ¶ 16.  However, in response to an interrogatory propounded by Defendant, Plaintiff identified only one instance in which she was allegedly underpaid–on May 12, 2006, when she was paid for the actual time she spent delivering mail on Rural Route 54, rather than the evaluated time.  *See* Ex. F, attached to Def't Mem. [Doc. 43].

     In his declaration, Customer Service Supervisor James Jarm described the compensation structure for RCAs such as Plaintiff, who are paid according to the system detailed in Article 9.2.I of the Agreement between the USPS and the National Rural Letter Carriers' Association. *See* Declaration of James Jarm, attached as Ex. D. to Def't Mem. at ¶ 10.  The Article provides that RCAs are paid the "evaluated" time for delivering mail on their assigned routes when they

14

do not work in excess of forty hours per week.  When the RCA's total actual hours worked exceeds forty hours, their compensation for the week is based on the actual number of hours worked plus overtime for the number of hours worked in excess of forty hours.  *Id*.  Plaintiff does not dispute this characterization of the RCA compensation structure.  *See* Pl. Resp. [Doc. 44] at 9-10.  Thus, whether Plaintiff should have been paid the evaluated time or the actual time for delivering the mail on Rural Route 54 on May 12, 2006 depends on the number of hours that she worked during that weekly pay period.

Plaintiff has admitted that May 12, 2006 falls within Week 2 of Pay Period 10, and that she worked a total of 50.80 hours during that pay period.  *See id.* at 16-17.  According to Plaintiff's Earnings Statement submitted by Defendant, during Week 2 of Pay Period 10, Plaintiff worked 34.34 hours on Rural Route 107, 5.66 hours on Rural Route 106, and 10.80 hours of overtime, for a total of 50.80 hours worked during the pay period.  *See* Ex. 3 to Ex. D, attached to Def't Mem.  As explained by Mr. Jarm in his declaration, because she worked over forty hours that week, Plaintiff was only entitled to be paid for the actual time she spent delivering mail on Rural Route 54 on May 12, 2006, rather than the evaluated time.  Mr. Jarm further explained that Rural Route 54 was not explicitly referenced in Plaintiff's earning statement because the six hours worked on May 12, 2006 were overtime, and were therefore included in the 10.80 hours of overtime listed on the statement under Miscellaneous Code A999. *See* Ex. D, attached to Def't Mem. at ¶ 12.  Plaintiff has proffered no evidence to challenge or rebut Mr. Jarm's explanation.  Her contention that she was underpaid is nothing more than a conclusory allegation lacking in factual support, and does not create a genuine question of material fact.  Even if Plaintiff could somehow demonstrate that she should have been paid for the evaluated time rather than the actual time worked on that particular day, Defendant is still

15

entitled to summary judgment because Plaintiff has not come forward with any evidence that could indicate that the alleged one-time shortage of $54.12 was the result of intentional discrimination rather than a clerical error.

    D.  Retaliation

    Plaintiff also alleges that she was terminated from her probationary employment with the USPS for "speaking out against discriminatory treatment on the job."  First Amended Complaint [Doc. 3] at ¶ 43.  A retaliation claim brought under Title VII consists of three elements: 1) the plaintiff engaged in protected opposition to discrimination; 2) the plaintiff suffered an adverse employment action; and 3) there is a causal connection between the protected activity and the adverse employment action.  Plaintiff's retaliation claim fails because she has not provided evidence that she engaged in a protected activity and has also failed to demonstrate any causal link between her complaint about being allegedly shorted in one paycheck and her termination.

    For the purpose of Title VII retaliation claims, protected activities fall into two distinct categories–participation and opposition.  Title VII's participation clause provides that an employer may not retaliate against an employee because the employee has participated in any manner in an investigation, proceeding, or hearing under Title VII.  *See* 42 U.S.C.A. § 2000e-3(a).  "The participation clause is designed to ensure that Title VII protections are not undermined by retaliation against employees who use the Title VII process to protect their rights."  *Vaughn v. Epworth Villa*, 537 F.3d 1147, 1151 (10th Cir. 2008), *cert. denied*, 129 S. Ct. 1528 (2009).  On the other hand, the opposition clause provides that an employer may not retaliate against an employee "because he has opposed any practice made an unlawful employment practice" by Title VII.  42 U.S.C.A. § 2000e-3(a).

    In this case, Plaintiff's actions can only fall within the scope of the opposition clause

because there is no evidence suggesting that she was involved in any proceeding arising under Title VII, nor does she allege participation in any such proceeding in her First Amended Complaint.  On the contrary, she avers that her protected activity consists of "speaking out against discriminatory treatment on the job." First Amended Complaint [Doc. 3] at ¶ 43. According to Plaintiff, her only opposition to discriminatory treatment consists of complaints to her direct supervisor, Frank Ortega, that she was underpaid for her work on May 12, 2006.[5]

In her deposition, Plaintiff testified that on or about May 19, 2006, she spoke to Mr. Ortega about the alleged shortage in her paycheck.  *See* Exhibit E, attached to Def't Mem., at 33-34.  She alleges that she showed Mr. Ortega her Earnings Statement for Pay Period 10 and informed him that she had not been properly paid for the work she did delivering mail on Rural Route 54 on May 12, 2006.  *See id.* at 35.[6]  Plaintiff claims that Mr. Ortega looked at the Earnings Statement and acknowledged that Route 54 was not specifically referenced therein.  *Id.* Mr. Ortega then allegedly informed Plaintiff that he would look into the problem, that the problem would be fixed, and that she would be paid on the following check.  *Id.*  According to Plaintiff, the foregoing was the extent of her conversation with Mr. Ortega.  *Id.* at 36.

Plaintiff's complaint to Mr. Ortega regarding her pay does not fall within the realm of

---

[5] In her Complaint, Plaintiff claimed that she raised her wage discrimination complaint with Mr. Trujillo as well.  First Amended Complaint [Doc. 3] at ¶ 19.  However, in her answer to Defendant's Interrogatory No. 3 and in her deposition testimony, Plaintiff refers only to a conversation that she had with Mr. Ortega, and she presented no evidence that she ever spoke with Mr. Trujillo about the alleged wage discrimination.  *See* Plaintiff's Deposition, attached as Ex. E. to Def't Mem. at 33:24-36:20.

[6] In his Declaration, Mr. Ortega claims that Plaintiff never informed him that she felt that she had not been fully paid all of the wages due to her.  *See* Ex. B, attached to Def't Mem. at ¶ 8. Nevertheless, for purposes of deciding this motion, the Court will assume that Plaintiff did make such complaints to Mr. Ortega.

protected opposition activity under Title VII because at no time during her discussion with Mr. Ortega did Plaintiff allege that she was the victim of discrimination or that she had been shorted because of her gender or national origin. An employer cannot engage in unlawful retaliation if it does not know that the employee has opposed or is opposing a violation of Title VII. *See Petersen v. Utah Dep't of Corrections*, 301 F.3d 1182, 1188 (10th Cir. 2002). Thus, because Plaintiff's complaint to Mr. Ortega concerning her alleged pay disparity apparently did not indicate that she believed the disparity stemmed from discriminatory treatment based on her gender or national origin, it does not constitute protected activity for Title VII purposes, *id.* at 1189, and cannot form the basis for a retaliation complaint.

Plaintiff's retaliation claim also fails because Plaintiff cannot establish a causal connection between her allegedly protected activity and her termination. She has produced no evidence to indicate that Mr. Trujillo was aware that she had complained to Mr. Ortega about being shorted. If Mr. Trujillo was not aware of her allegedly protected activity, by definition, he could not have retaliated against her for it. *See Petersen*, 301 F.3d at 1189 (employer's action against an employee cannot be because of that employee's protected opposition unless the employer knows the employee has engaged in protected opposition activity); *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993) (plaintiff must show that the individual who took the adverse action against him knew of the employee's protected activity).

Finally, even if Plaintiff could establish a *prima facie* case of retaliation, Defendant is entitled to summary judgment on this claim because it has articulated a legitimate, non-discriminatory explanation for Plaintiff's termination, and, as discussed above, Plaintiff failed to come forward with any evidence showing that Defendant's explanation is pretextual.

**<u>CONCLUSION</u>**

18

**IT IS THEREFORE ORDERED** that Defendant Potter's *Motion for Summary Judgment* [Doc. 42] is **GRANTED**.


_____
**UNITED STATES DISTRICT JUDGE**